UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-20486-CR-UNGARO/TORRES

UNITED STATES OF AMERICA,

>    Plaintiff,

vs.

SHAQUEVIA GILMORE,

>    Defendant.
_____/

REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

This matter is before the Court on Defendant's Motion to Suppress Physical Evidence and Statements ("Motion"). [D.E. 20]. The Court has reviewed the Motion and the Government's response in opposition [D.E. 25]; the Defendant did not file a reply. The Court held an evidentiary hearing regarding this Motion on October 3, 2011. For the following reasons, Defendant's Motion should be **DENIED**.

## I.  BACKGROUND

On July 21, 2011, Defendant was indicted for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), arising from an arrest on July 11, 2011. [D.E. 8]. Defendant moves to suppress the recovered firearm and four loaded rounds. The Motion also sought to suppress certain post-arrest statements; however, the Defendant withdrew this portion of the Motion at the hearing.

Defendant contends the physical evidence ought to be suppressed because "[c]onsidering the totality of the circumstances in this case, the police lacked

reasonable suspicion to detain Ms. Gilmore" and the evidence seized as a result of the detention violated *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny.

## II. FINDINGS OF FACT

On July 11, 2011, at approximately 5:00 p.m., Miami-Dade Police Officer Raul Cardeso, a member of the department's Tactical Narcotics Team ("TNT"), was investigating street level drug crimes in the Little Haiti neighborhood of Miami, Florida. Officer Cardeso, wearing plain clothes in an unmarked vehicle, drove past a residence located at 363 NW 59th Street and observed 6-7 black males standing in or near the front yard of the residence. The front yard was separated from the sidewalk by a chainlink fence. The group was divided by the fence with some individuals standing on the sidewalk while others stood within the cartilage. As Officer Cardeso passed the group traveling with his windows down at approximately 15 miles per hour, he detected the odor of burnt marijuana, observed smoke in the air, and saw an individual pass to another individual what he believed was – based on its appearance and his past experience – a marijuana cigar.

Officer Cardeso then radioed other TNT officers, explained what he observed and instructed two teams to further investigate this group. Shortly thereafter, at least two unmarked vehicles occupied by at least four officers arrived at the scene. Officer Leonardo Sosa exited his vehicle, with his gun holstered and wearing full tactical gear with "police" clearly stitched across his flak jacket. As he approached the Defendant, who stood on the sidewalk near the group of individuals, Officer Sosa observed her drop a small bag on the ground. Based on his training and past experience, Officer Sosa

suspected the bag contained illegal narcotics. After Officer Sosa arrested the Defendant and seized the small bag, he inspected the bag and reasonably concluded that the green leafy substance was marijuana.

Because Defendant is female, TNT Officer Carolina Gamez (whose firearm remained holstered) assisted Officer Sosa to conduct a pat-down search. Both Officer Sosa and Gamez testified that Defendant wore baggy clothing, behaved suspiciously, was fidgety, uncooperative, and maintained an awkward and unusual stance by holding her legs close together. Based on this behavior, Officer Gamez grew suspicious that Defendant was concealing narcotics or a weapon on her person. Officer Gamez searched Defendant's waistband and observed what was later identified as a firearm fall from between her legs out the front of her pants. The officers secured the firearm and discovered four rounds. Thereafter, Defendant was identified as a convicted felon.

Notably, the Defendant called a defense witness who was at the scene during Defendant's arrest. Contrary to the Officers' testimony, D'angelo Brown testified that several vehicles and multiple officers quickly arrived at the residence, exited their vehicles in full tactical gear, with their firearms drawn and commanded that everyone lay down. Mr. Brown, believing he was not free to leave, complied with the command. He further testified that each individual present, including himself, was searched by officers to, as Mr. Brown was told, ensure the safety of both the individuals and the officers. As far as this record demonstrates, and the Government does not refute this claim, the officers only arrested the Defendant.

### *III.  ANALYSIS*

The Fourth Amendment protects individuals from unreasonable searches and seizures. *See* U.S. Const. amend IV.  Consistent with Fourth Amendment principles, an officer "may conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000) (citing *Terry,* 392 U.S. 1, 30 (1968)). Reasonable suspicion is "a particularized and objective basis" for suspecting the person stopped of criminal activity. *United States v. Cortez,* 449 U.S. 411, 417-18 (1981).  "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 123. The officer conducting the stop "must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." *Id.* at 123-24 (quoting *Terry,* 392 U.S. at 27).

In determining whether a reasonable suspicion existed, courts consider the totality of the circumstances. *United States v. Sokolow,* 490 U.S. 1, 8 (1989).  "This process allows officers to draw on thier own experience and specialized training to make inferences and deductions about the cumulative information available to them that might elude an untrained person." *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (citations and internal quotations omitted).   This analytical process

4

entails making a practical determination and reaching "a common sense conclusion" based on "probabilities" and not "hard certainties." *Cortez*, 449 U.S. at 418.

Further, in connection with a *Terry* stop, an officer may conduct a pat-down search if he has reason to believe that his own safety or the safety of others is at risk. *See United States v. White*, 593 F.3d 1199, 1203 (11th Cir. 2010) (citing *Terry*, 392 U.S. at 27). "The officer need not be *absolutely certain* that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted to belief that his safety or that of others was in danger." *Id.* at 1202-03 (citations omitted, emphasis in original). Ultimately, the burden rests with the government to prove the reasonableness of the officer's suspicion. *United States v. Salzano*, 158 F.3d 1107, 1111 (10th Cir.1998).

Based on the totality of the circumstances, we conclude that the officers had reasonable suspicion to detain and search the Defendant. Also, the officers had probable cause to arrest and conduct a pat-down search incident to that arrest. The salient objective facts supporting our conclusion are: 1) Officer Cardeso observed an individual pass a marijuana cigar, he smelled the odor of burnt marijuana and observed smoke (reasonable suspicion to investigate); 2) Officer Sosa observed Defendant drop a small bag that looked to contain marijuana (probable cause to arrest); and, 3) because Defendant wore baggy clothes, acted nervously, was fidgety, and kept her legs close together, Officer Gamez was justified to search Defendant for concealed narcotics or a weapon (reasonable suspicion to conduct pat-down search).

Based on Officer Cardeso's observation, at a minimum, the officers had a reasonable suspicion of criminal activity that justified further investigation. *See Terry,* 392 U.S. at 30 (1968) (holding that the police may stop and briefly detain a person to investigate a reasonable suspicion that the person is engaged in criminal activity, even though probable cause is lacking); *United States v. Stanyard*, No. 1:06cr269-MHT, 2007 WL 1655958, at *3-4 (M.D. Ala. June 7, 2007) (officers who observed, based on their experience and training, a marijuana cigar were justified in concluding that there was a fair probability that illegal activity had occurred, and they had sufficient reasonable suspicion to conduct a *Terry* stop); *cf United States v. Salter*, 255 Fed. App'x 355, 359-60 (11th Cir. 2007) (fact that officer smelled alcohol and observed individuals holding open containers contributed to officer's reasonable suspicion of criminal activity to conduct a *Terry* stop). Thus, Officer Sosa was justified in approaching Defendant to conduct a *Terry* investigative stop. *Id.*[1]

---

[1] We find the testimony of Officer Sosa, Officer Gamaz and Mr. Brown credible. Thus, while those officers kept their weapons holstered, other officers likely drew their weapons. However, taking this fact as true, the investigative *Terry* stop was still justified and, under the circumstances, did not turn into a full blown arrest as to the Defendant. The Supreme Court has long held that, in effecting an investigatory stop under *Terry*, police officers are justified in taking reasonable steps to ensure their personal safety so long as they possess "an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Michigan v. Long*, 463 U.S. 1032, 1051 (1983). It follows that an investigatory stop does not necessarily ripen into an arrest because an officer draws his weapon, *United States v. Roper*, 702 F.2d 984, 987 (11th Cir.1983); or handcuffs a suspect, *United States v. Hastamorir*, 881 F.2d 1551, 1556-57 (11th Cir.1989); or orders a suspect to lie face down on the ground. *Courson v. McMillian*, 939 F.2d 1479, 1493 (11th Cir.1991).

Because Officer Sosa then observed Defendant drop a small bag that looked to contain marijuana, his reasonable suspicion developed into probable cause that warranted Defendant's arrest. *See Bryant v. Grogan*, Case No. CV407-82, 2008 WL 2811308, at *2 (S.D. Ga. July 21, 2008) (holding that the officer had probable cause to arrest after observing the defendant drop a white rock, which field tested positive for cocaine); *see also United States v. Villegas*, 495 F.3d 761, 771 n.4 (7th Cir. 2007) (officer had probable cause to arrest after observing the defendant drop a bag that appeared to contain marijuana); *McDade v. City of Chicago*, 264 F. Supp. 2d 730, 732-33 (N.D. Ill. 2003) (officers investigating suspected drug activity had reasonable suspicion to conduct a *Terry* stop after observing the plaintiff hand a bag to a second individual. After approaching the individuals and observing the second individual drop the bag of what appeared to be marijuana, the "reasonable suspicion ripened into probable cause").

Once an officer effects an arrest based on probable cause, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the suspect might seek to use in order to resist arrest or effect an escape. Search and seizure of any evidence on the arrestee's person, in order to prevent its concealment or destruction, is permissible incident to arrest. *Chimel v. California*, 395 U.S. 752 (1969); *United States v. Rosenthal*, 793 F.2d 1214 (11th Cir. 1986). This type of search of a person needs no justification in addition to the showing that the person is arrested; no showing that there is probable cause that the arrestee is armed or concealing evidence

must be made. *United States v. Robinson*, 414 U.S. 218 (1973); *see also United States v. Standridge*, 810 F.2d 1034, 1037 (11th Cir. 1987) ("A search incident to arrest is always allowed of the suspect's person and the immediate area from which the subject can grab a weapon or destroy evidence."). Because Officer Gamez was authorized to conduct a warrantless search of Defendant incident to her arrest, her seizure of the firearm was proper.

But, even if Officer Gamez's warrantless search was unjustified (which it was not), Officers Sosa and Gamez were still justified to conduct a protective pat-down search of Defendant under *Terry* based on her suspicious behavior. Indeed, an officer may conduct a pat-down search if he has reason to believe that his own safety or the safety of others is at risk. *See White*, 593 F.3d at 1203 (citing *Terry*, 392 U.S. at 27). Both officers testified credibly that Defendant wore baggy clothes, acted nervously, was fidgety and maintained a stance that suggested she was concealing either narcotics or a weapon on her person. These observations, combined with the reasonable suspicion to conduct a *Terry* stop, are sufficient to justify a safety pat-down search of the Defendant. *See Hunter*, 291 F.3d at 1307 ("Once an officer has legitimately stopped an individual, the officer can frisk the individual so long as a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.") (internal quotations omitted); *United States v. Reed*, 402 Fed. App'x 413, 416-17 (11th Cir. 2010) (concluded *Terry* frisk was justified based on movements –

similar to the Defendant's – that "indicated an intent to hide or discard something," uncooperative behavior, and baggy clothing).[2]

## *IV. CONCLUSION*

Based on the totality of the circumstances, Officers Sosa and Gamez had reasonable suspicion to detain based on Officer Cardeso's observations and reasonable suspicion to frisk based on Defendant's behavior. Moreover, Officer Gamez lawfully searched Defendant incident to an arrest supported by probable cause. Accordingly, Defendant's Motion to Suppress should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have until **October 12, 2011** to serve and file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. The Court finds good cause to expedite the objection period in light of the imminent trial date. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein, if any. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

---

[2] Defendant also moved to suppress the small bag of marijuana. The Government contends that Defendant "abandoned" this item and, therefore, lacks standing to suppress this evidence. [D.E. 25 at 4]. Irrespective of the "abandonment" issue, Officer Sosa properly seized the small bag dropped in plain view. *See United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006) ("The 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent.").

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 4th day of October, 2011.

                                               */s/ Edwin G. Torres*
                                               EDWIN G. TORRES
                                               United States Magistrate Judge